**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LYNETTE K. DUPREE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 08 C 2114** |
| | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **v.** | ) | |
| | ) | |
| **MARY E. PETERS, Secretary of the** | ) | |
| **Department of Transportation,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff, Lynette K. DuPree, an African-American female, filed a two count complaint

against defendant, Mary E. Peters, Secretary of the Department of Transportation,[2] alleging sex

and race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"),

42 U.S.C. § 2000e-2 *et seq.* Before the court is defendant's motion for summary judgment

[#41]. For the reasons set forth below, defendant's motion [#41] is granted.

## RELEVANT FACTS

DuPree has worked for the federal government since 1971. In 1989, she began working

in her current position as a Telecommunications Specialist ("TS") in the Operations Branch of

---

[1] DuPree was employed by the Federal Aviation Administration ("FAA"), which falls under the purview of the Department of Transportation ("DOT"). Pursuant to 42 U.S.C. § 2000e-16(c), the Secretary of the DOT is the proper defendant. *See McGuinness* v. *USPS*, 744 F.2d 1318, 1322 (7th Cir. 1984) ("The only proper defendant to a Title VII suit is the head of the agency accused of having discriminated against the plaintiff.") (citing 42 U.S.C. § 2000e-16(c)).

[2] DuPree's original complaint named FAA employees Jody Oles, Claude Nunez, and Robert Sturgell as defendants. Her second amended complaint names only Mary Peters, the only proper defendant to the action. *See McGuinness*, 744 F.3d at 1322.

the Federal Aviation Administration's ("FAA") Airways Facility Division. The Operations Branch is mainly a technical organization; its primary purpose is to fix problems of a technical nature within the National Airspace System ("NAS"). As a TS, DuPree is responsible for providing connectivity to the telecommunications systems in an eight-state region of the NAS. She is also responsible for purchasing phone systems for administrative and technical facilities.

In1989 or early 1990, Claude Nunez became DuPree's direct supervisor. Throughout the time that DuPree reported to Nunez, she consistently expressed a desire to move up to a higher pay grade, specifically, to the "J-Band" salary level, a level that was restricted to engineers. She spoke with Nunez about her ambitions during her performance reviews and in a few additional meetings with Nunez and Operations Branch Manger Jody Oles. Nunez and Oles suggested that DuPree obtain more national experience, that she work on projects with higher visibility, and that she obtain more technical experience within the NAS. As a result, DuPree worked on a few projects with higher visibility, such as the "ADTN 2000" project. In fact, her work on that project was recognized by the FAA at a national level. At a staff meeting led by Nunez shortly thereafter, however, Nunez himself failed to recognize Dupree for her work. He praised every employee present at the meeting for a work-related accomplishment except DuPree. Nunez testified that he did not feel the need to praise DuPree in light of her recent national recognition.

I.      **DuPree Worked a Six Month Detail as the TSE Section Supervisor**

Between 1989 and 2003, DuPree worked several details, temporary positions in various sectors of the Airways Facility Division. One such detail took place in July 2002, when she worked for six months as the Telecommunications and Spectrum Engineering ("TSE") Section

2

Supervisor. At the time, the position was vacant, and the FAA allowed employees to work six month details to temporarily fill the vacancy. The permanent TSE Section Supervisor position was at the J-Band salary level and therefore restricted to engineers; however, the FAA offered all employees the chance to work the six-month details at a lower salary level. Indeed, engineers that worked the details received the J-Band salary while non-engineers did not. Each of the four other employees selected for a detail, all of whom were white males, were either promoted to or already at the J-Band salary level because they were all engineers.

DuPree applied for the detail in early 2002. She acknowledged that she was not eligible for a salary increase[3] and represented that she nevertheless wanted to work the detail in order to gain knowledge and experience.[4] She was assigned to the detail from July 2002 until January 2003. Nunez, who at the time was the former TSE Section Supervisor, supervised her during the detail. Nunez received complaints from two employees that DuPree improperly coordinated assignments and failed to properly utilize her employees. DuPree's administrative assistant also voiced concerns. The relationship between DuPree and her assistant so deteriorated that the assistant chose to return to her permanent position before DuPree's detail ended. Nunez spoke with DuPree about these complaints and DuPree agreed to make an effort to resolve them. Nunez testified that DuPree was able to resolve the issues concerning employee utilization and

_____

[3]Despite her acknowledgment, Dupree requested a salary increase. Due to the FAA's restriction of the J-Band salary to engineers, however, her request was denied.

[4]Nunez, the recommending official for the promotion at issue, testified that an employee such as DuPree [who was not an engineer] could gain technical experience by working in a detail that was technical in nature. Deposition of Claude Nunez 56:14-21, Apr. 1, 2009, attached as Ex. D to Def.'s L.R. 56.1 SoF (hereinafter "Nunez Dep.").

assignment coordination and that these issues were common for someone in a new supervisory role. Deposition of Claude Nunez, Apr. 1, 2009, 114:3-115:8 (hereinafter "Nunez Dep.").

Nunez further testified that he did not believe that DuPree was able to develop any significant technical skills during her time in the detail. *Id.* 112:16-22. He acknowledged that DuPree participated in daily teleconferences concerning technological issues and could not recall that she had any technical problems during her detail; however, he "could not find anywhere where she had developed that [technical] skill set." *Id.* 112:21-22. He was unsure as to why she was unable to develop these skills but, from what he observed in his supervisory capacity, she was unable to. When DuPree's detail ended, she returned to her position as a TS.

## II.     The FAA's Decision to Hire a Permanent TSE Section Supervisor

On December 24, 2003, the FAA issued a vacancy announcement for the permanent TSE Section Supervisor position. The original announcement closed on January 13, 2004. Both DuPree and Jeffrey McCoy, the employee hired into the position, applied before this date. The FAA decided to reopen the announcement on January 21, 2004, however, after it realized that the timing of the announcement (so close to the holidays) may have prevented some employees from applying. The FAA also decided to open the position to all employees, reasoning that either an engineer or a non-engineer with a high degree of technical ability could do the job.

Per the Vacancy Announcement, the position required "an advanced knowledge of the technical aspects of the work directed." Vacancy Announcement, attached as Ex. K to Def.'s L.R. 56.1 SoF. The position also required non-technical skills, such as the ability to "assign[] tasks and responsibilities; monitor[] and evaluat[e] performance, coach[] and develop[] employee capabilities" and a wide range of knowledge about the FAA, including "an advanced

knowledge of budget, human resource, and other administrative policies and procedures, and an advanced understanding of the objectives of the Airway Facilities Division." *Id.* Given the technical focus of the Operations Branch, the FAA was particularly interested in finding a candidate with extensive technological experience throughout the NAS.

In February 2004, after the announcement officially closed, Diana Maiello, a personnel specialist in Human Resources, reviewed the applications that were submitted and compiled a list of eligible candidates. Candidates were eligible if they met the minimum qualification standards listed in the announcement; specifically, if they had worked for at least one year in a position at a salary level immediately below that of the TSE Section Supervisor position. Maiello testified that she did not rank the candidates because there were so few of them. She also testified that the decision whether to rank candidates is made before a vacancy announcement is issued; however, when a low number of applications are received, she usually contacts the relevant department to ask if it still wants the candidates ranked. *See* Deposition of Diana Maiello 22:24-23:17, April 1, 2009, attached as Ex. G to Def.'s L.R. 56.1 SoF.

Maiello forwarded the list of eligible candidates to Nunez, who was the recommending official for the position. Nunez reviewed each candidate and prepared a recommendation memorandum for Oles, who was the selecting official. Due to time restrictions, Nunez did not conduct interviews; however, he had supervisory experience with most of the candidates and was able to solicit input from almost every candidate's supervisor. Nunez did not solicit input from DuPree's supervisor at the time because her supervisor was also a candidate. Nunez felt that he had sufficient experience supervising DuPree such that the lack of input would not put her at a disadvantage.

Nunez's final recommendation, as outlined in his recommendation memorandum, was to hire Jeff McCoy, a Caucasian male. Nunez believed McCoy to be the most qualified candidate based on McCoy's leadership skills and his NAS technical experience at the local, regional, and national levels. McCoy had successfully worked multiple supervisory details prior to his application and was a member of the Operations Branch Leadership Team, a team established to help resolve issues between management and the union. Though McCoy was not an engineer, he also had a strong technological background. He previously held several positions of a technical nature and in 2002, received the "Technician of the Year" award. Notably, he worked as a subject matter expert on the national STARS Program, an automation program that was used to separate and sequence aircraft and to provide traffic alerts and advisories. In this role, he was required to prepare oral and written briefings of a technical nature, which he presented to high-level officials in Washington. *See* Nunez Recommendation Memorandum, at 1, attached as Ex. O to Def.'s L.R. 56.1 SoF (hereinafter "Nunez Memo").

Nunez's memorandum included evaluations of all the candidates. Regarding DuPree, Nunez noted that she had successfully planned, organized, and coordinated work with various regional programs. He highlighted her "good interpersonal skills" and noted that she had taken on leadership roles for an extended period of time. Nunez Memo at 2. Nunez further indicated that while DuPree demonstrated a "a moderate depth of leadership skills, she [did] not possess the depth required for th[e] position." *Id.* He stated that she needed to continue to develop these skills, referencing the employee complaints he received during DuPree's six-month detail as the TSE Section Supervisor. Finally, he stated that DuPree failed to demonstrate that she possessed the requisite extensive technical experience; he specifically stated that she "did not adequately

demonstrate her ability to identify and develop technical solutions for various NAS facilities, services, and/or systems." *Id.* Nunez testified that DuPree was not a close second for the position; rather, he evaluated at least one other candidate as better qualified than DuPree [but still less qualified than McCoy]. Nunez Dep. 134:17-135:10.

In March 2004, Nunez met with Oles to discuss his memorandum. Oles did not conduct an independent assessment of the candidates. She accepted and agreed with Nunez's assessment of the candidates, finding McCoy to have the most extensive technological background of all the candidates and to have very strong leadership skills. Shortly after this meeting, Oles selected McCoy for the position. Nunez notified the other candidates of McCoy's selection and of the reasons for each candidate's non-selection. Nunez told DuPree that she was not selected because her technological experience was less extensive than McCoy's and her leadership skills were less developed than McCoy's.

Shortly after McCoy assumed the role of TSE Section Supervisor, he was promoted again. After McCoy's promotion, the FAA decided to re-restrict the position to engineers. Nunez testified that the decision was based on a national effort to standardize the Section Supervisor positions across the FAA.

## III.    The EEOC Hearing

On June 21, 2004, DuPree filed a complaint of race, color, gender, and age discrimination with the EEOC. On April 5, 2006, an EEOC Administrative Judge heard her case. During the proceedings, Nunez testified about the technical expertise required for the TSE Section Supervisor position. When asked if he believed that this technical expertise was more likely to be found in men than in women, Nunez responded that "based on the demographics of [the

FAA], I guess I would tend to agree with that." Administrative Hearing Transcript 170:7-14, attached as Ex. C to Def.'s L.R. 56.1 SoF (hereinafter "Admin. Tr."). In response to a second question as to whether he believed that a male like McCoy would be more likely to have the requisite technical skills than a woman like DuPree, he responded, "I would agree with that. . . . Again, based on [the FAA's] demographics." *Id.* 171:8-15. Nunez was asked similar questions during his deposition, which took place on April 1, 2009. In his deposition, he indicated that he believed that DuPree "shied away" from technical issues. Nunez Dep. 61:22-23.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c) advisory committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia,* 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences

8

in that party's favor.  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**ANALYSIS**

Defendant argues that it is entitled to summary judgment on both counts in the complaint because DuPree has not presented direct or circumstantial evidence of discrimination under the direct method of proof and, alternatively, because DuPree cannot establish a *prima facie* case of discrimination under the indirect method of proof.  Even if DuPree can establish a *prima facie* case, defendant argues, she has not produced any evidence of pretext.  DuPree argues that there exist genuine issues of material fact under both the direct and indirect methods of proof such that summary judgment would be inappropriate.

**I.      The Direct Method of Proof**

DuPree may establish race or sex discrimination under Title VII using the direct or the indirect method of proof.  *Scaife* v. *Cook County*, 446 F.3d 735, 739 (7th Cir. 2006) (citing *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d. 688 (1973)).  Under the direct method, DuPree can prove her case through direct evidence (such as an admission by the decisionmaker that his actions were based on unlawful animus) or through circumstantial evidence, "i.e., evidence that allows a jury to infer intentional discrimination by the decisionmaker."  *Rogers* v. *City of Chi.*, 320 F.3d 748, 753-54 (7th Cir. 2003) (internal citations omitted).  There are three categories of circumstantial evidence: "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment;

and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Sun* v. *Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 812 (7th Cir. 2007) (citing *Rudin* v. *Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720-21 (7th Cir. 2004). DuPree relies on the first and third categories, identifying several pieces of evidence that together, she argues, constitute a "convincing mosaic of discrimination."

## A.    Ambiguous Oral Statements

DuPree first argues that Nunez's remarks during the EEOC hearing and at his deposition demonstrate that he harbored discriminatory, "stereotypical preconceptions about [] DuPree's ability" to do the TSE Section Supervisor job and that this discriminatory animus motivated his decision not to recommend DuPree for the position.[5] Pl.'s Resp. at 4. During the EEOC hearing on April 5, 2007, Nunez indicated that it was his belief, based on the demographics of the FAA, that the technical expertise needed for the TSE Section Supervisor position was more likely to be found in men than in women and that within the FAA, a man was more likely than a woman to have such expertise. During his deposition on April 1, 2009, Nunez stated that he believed DuPree "shied away" from technical issues. Nunez Dep. 61:23.

---

[5]The court notes that while Oles was the selecting official, Nunez's recommendation had a significant influence over Oles' decision such that bias on his behalf may provide a basis for liability. *See Brewer* v. *Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 918 (7th Cir. 2007) ("Mere 'paper review' of the informer's recommendation will not shield the employer from liability if her recommendation is racially motivated."); *David* v. *Caterpillar, Inc.*, 324 F.3d 851, 861 (7th Cir. 2003) (holding that liability can be based on the bias of employee with the duty to recommend other employees for a promotion, where the decisionmaker received the necessary information for decisions from that recommending employee). Oles did not perform an independent evaluation of the candidates; rather, she relied exclusively on her discussion with Nunez and on his memorandum in making her decision.

While "isolated comments that are no more than 'stray' remarks in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus," *Merillat* v. *Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006), a remark can provide an inference of discrimination when it was (1) made by the decision maker or one having input on the employment decision in question, (2) made around the time of the decision, and (3) in reference to the adverse employment action complained of. *Id.* Nunez's remarks at the EEOC hearing and at his deposition were made 3 and 5 years, respectively, after Nunez decided not to recommend DuPree for the position. Further, he made these statements in response to questions posed by DuPree's attorney regarding the technical skills needed for the TSE Section Supervisor position, not in reference to his decision to not recommend DuPree. Finally, his EEOC testimony was explicitly informed by the demographics of the FAA. DuPree has put forth no evidence to meaningfully connect these stray remarks to Nunez's decision not to recommend DuPree. As such, these remarks fail to support an inference that Nunez's recommendation decision was motivated by sex or race related bias. *See Merillat*, 470 F.3d at 694.

**B.      Evidence of Pretext**

The remaining circumstantial evidence on which DuPree relies pertains to the issue of pretext. She argues that the reasons offered by Nunez for her non-selection, namely, her less extensive technological background and moderate leadership skills, were a pretext for discrimination under the third recognized category of circumstantial evidence, which is "substantially similar to the pretext required under the indirect method of proof." *Venturelli* v. *ARC Cmty. Servs., Inc.*, 350 F.3d 592, 601 (7th Cir. 2003).

A pretext is not a mere error, but a lie, a phony reason for the action. *Hudson* v. *Chi. Transit Auth.*, 375 F.3d 552, 562 (7th Cir. 2004). Thus, "[t]o show pretext, plaintiff must show more than defendant's decision was mistaken, ill considered, or foolish, and as long as the employer honestly believes [its stated] reasons, pretext has not been shown. . . . The only concern in reviewing an employer's reasons for [an adverse employment action] is the honesty of the employer's beliefs." *Kodl* v. *Bd. of Educ. School Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007). DuPree relies on an array of evidence to demonstrate pretext, including (1) evidence of alleged disparate treatment; (2) evidence of McCoy's alleged preselection; and (3) the fact that Nunez "did not employ his personal knowledge of [] DuPree's technical [and leadership] experience in a way that would favor [] DuPree." Pl.'s Resp. at 9.

**1.      Alleged Disparate Treatment**

DuPree seeks to demonstrate pretext first by showing that she sustained a history of disparate treatment throughout her time at the FAA. She draws attention to the fact that although she consistently expressed to Nunez and Oles a desire to work in a J-Band position and took their suggestions to gain additional relevant experience, she was never promoted. She does not, however, identify a similarly situated employee outside of her protected class(es) that exhibited similar behavior and was rewarded with a promotion or other favorable treatment. The mere fact that she was not promoted despite her efforts to gain experience is thus not evidence of disparate treatment, nor does it provide a basis to suggest that defendant's proffered reason is pretextual.

DuPree next points to the fact that no African-American female had been promoted to or hired into a J-Band position since she has been at the FAA, characterizing this fact as evidence of disparate treatment. In light of her testimony that she was the only African American female

at the FAA, *see* DuPree Dep. 170:7-8, and her lack of evidence that any African-American female (or male) ever applied for a J-Band position, however, she cannot demonstrate that the FAA's failure to hire an African-American female amounts to disparate treatment or supports an inference of pretext.

Lastly, DuPree argues that while Nunez "continuously ignored [her] contributions and accomplishments," he recognized the contributions of others. Pl.'s Resp. at 6. The only example she provides is Nunez's failure to recognize her work on an important project during a meeting in which he recognized every other employee present for an accomplishment. Because DuPree does not identify the race or gender of the other employees, however, the court is unable to determine whether this constitutes disparate treatment. Further, Nunez testified that he did not recognize DuPree at that meeting because she was recognized at a national level for the work. Dupree admits that she was recognized on a national level and does not offer any additional evidence to dispute the sincerity of Nunez's testimony.

In total, DuPree's proffered evidence fails to raise a genuine issue as to whether she was subjected to disparate treatment – that is, as to whether similarly situated employees, not of her protected class(es), received more favorable treatment – and, as a result, fails to raise a genuine issue as to pretext. For each fact, DuPree fails to identify with the requisite specificity an employee whom she believes was treated more favorably. Moreover, there is no evidence to suggest that DuPree's race or sex played any role in her failure to move up the corporate ladder or in Nunez's failure to recognize her work during a staff meeting. Without a more developed evidentiary showing by DuPree, it is unreasonable to construe any of the above-described facts

as evidence that she was not promoted to the TSE Section Supervisor position based on her race or sex.[6]

## 2. McCoy's Alleged Preselection

DuPree next argues that McCoy was preselected for the TSE Section Supervisor position and that his preselection suggests that defendant's proffered reasons are pretextual, relying on *Crochrell* v. *Dept. of Transp.*, No. 03-cv-870, 2005 WL 2388267, at *6 (S.D. Ill. Sept. 28, 2005). In *Cochrell*, the court found a genuine issue as to pretext where, *inter alia*, an individual began training for a position before a vacancy announcement was issued and his employer contravened its own policies to allow for the training. Here, by contrast, there is no evidence that McCoy began training or was selected for the TSE Section Supervisor position before the FAA issued the vacancy announcement. DuPree nevertheless argues that there is evidence that McCoy was preselected, pointing first to the FAA's decision in January 2004 to open the TSE Section Supervisor position to non-engineers and to its decision after McCoy left to again restrict the position to engineers.[7] The January 2004 decision, however, was based on a belief that non-

---

[6]In her response, DuPree also argued that an incident in the 1990s, in which Nunez dismissed DuPree from a detail after a white employee complained that DuPree showed favoritism towards an African-American employee, "made it clear that [] Nunez was predisposed to treat Ms. DuPree disparately." Pl.'s Resp. at 5. This incident, however, did not appear in her EEOC charge, nor did she raise it at the EEOC hearing. As a result, DuPree may not rely on this incident as evidence of discrimination. *See Ajayi* v. *Aramark Bus. Servs., Inc.*, 336 F.3d 520 (7th Cir. 2003) (prohibiting plaintiff from relying on a warning as evidence of discrimination "[b]ecause a Title VII claim must describe the same conduct as the plaintiff's underlying charge and because [the plaintiff's] EEOC charge never mentions or challenges this warning."); *Conley* v. *Vill. of Bedford Park*, 215 F.3d 703, 710 (7th Cir. 2000).

[7]DuPree also argues that the FAA's failure to pay her a J-Band salary during her detail as a TSE Section Supervisor raises an inference of discrimination because all of the other (white male) employees who worked the detail received the salary. DuPree, however, concedes that each of these employees was an engineer and therefore eligible for the salary increase, whereas she was a non-engineer who was not eligible. DuPree nonetheless contends that Nunez and Oles' failure to modify the detail to allow for an increase is evidence of discrimination. The failure to make an exception for DuPree, however, cannot fairly be construed as evidence of discriminatory intent.

engineers with strong technical experience could perform the job. Further, Nunez testified that the decision to re-restrict the position was made based on a national effort to standardize the position within the FAA. DuPree has presented no evidence to contradict this testimony or otherwise suggest that the change in requirements was effectuated specifically to preselect McCoy, as opposed to another non-engineer such as herself. She merely relies on her own speculative theory that the timing of the FAA's decision to change the job qualifications is evidence of McCoy's preselection. This theory, however, is insufficient to raise a genuine issue as to pretext. *See Rothman* v. *Emory Univ.*, 123 F.3d 446, 453 (7th Cir. 1997) (a plaintiff's own perceptions of his employer's motivations "generally provide an ineffectual means of proving discrimination.") (citing *Russell* v. *Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995)); *see also Tyler* v. *Runyon*, 70 F.3d 458, 469 (7th Cir. 1995) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.").

DuPree next argues that inconsistencies in the deposition testimony of Maiello suggest that McCoy was preselected. Specifically, she notes that Maiello testified that she did not rank the candidates because there were so few, but also testified that the decision to rank candidates is made before a vacancy announcement is issued (and therefore before the number of candidates can be known). DuPree fails to note, however, that Maiello also testified that where, as here, few applications are received, she "usually consult[s] with the [relevant department] *if they – they still want them rated and ranked . . . .*" Maiello Dep. 23:3-5 (emphasis added). It appears from this uncontroverted testimony that while the general rule is to determine whether to rank candidates before an announcement is issued, in circumstances where few applications are

received, the determination may be altered after the fact.  More importantly, however, the fact that Nunez did not request that the candidates be ranked does not allow for an inference that McCoy was preselected for the position.  Accordingly, Maiello's testimony fails to create a genuine issue as to pretext.

### 3.      Nunez's Alleged Inconsistent Evaluation of Candidates

DuPree's final pretext argument takes issue with Nunez's subjective evaluation of her qualifications as compared to McCoy's.  She specifically argues that Nunez's stated reasons for his failure to recommend DuPree, namely her inferior technological background and leadership skills as compared to McCoy's, were not the real reasons behind his failure to recommend her.

DuPree first focuses on Nunez's deposition testimony, highlighting his statement that employees working in the TS position could gain technical experience by working in a detail that was technical in nature, and noting that she worked a six-month detail as the TSE Section Supervisor, an engineering position that was technical in nature.  She argues that it is "inconsistent" for Nunez to "insist that [DuPree] simply gained little or no experience" in light of his testimony and her six-month detail, and that "[a] jury could infer pretext from this inconsistency."  Pl.'s Resp. at 8.

Along the same lines, DuPree also argues that Nunez "did not employ his personal knowledge of [] DuPree's technical experience in a way that would favor [her]."  Pl.'s Resp. at 9. DuPree specifically takes issue with the fact that although Nunez knew that she (1) participated in daily teleconferences on technical issues while she worked the TSE Section Supervisor detail; and (2) did not have any trouble handling the technical aspects of the TSE Section Supervisor

position, he "nevertheless claimed to be unaware of any technical experience that she gained from the detail." *Id.* She further takes issue with the fact that though Nunez claimed to be unaware of any technical experience she gained from the detail, he failed to reach out to her supervisor, who would have helped him to "fill in any claimed gaps in his own knowledge." *Id.*

DuPree may disagree with Nunez's final conclusion that her six-month detail did not provide her with sufficient technological experience, or with the fact that Nunez did not consult others before arriving at that conclusion; however, she has presented no evidence to indicate that Nunez did not actually believe this conclusion. To the contrary, his testimony demonstrates a sincere belief that while her detail provided her with the opportunity to gain technological skills, she simply did not develop them. The court also notes that Nunez's stated reason for not recommending her was that her technical background was not as extensive as McCoy's, not that she entirely lacked technical experience. In a pretext analysis, the question is not whether an employer's decision was foolish, but rather, whether the employer sincerely believed the reasons motivating its decision. *See Kodl*, 490 F.3d at 562. None of the facts that DuPree highlights call into question the sincerity of Nunez's belief that she had less extensive technical skills than McCoy, and as a result, they fail to raise a genuine issue as to pretext.

DuPree next asserts that in considering her leadership abilities, Nunez relied on his personal knowledge in a manner that negatively affected her candidacy, which she believes raises an inference as to the sincerity of his beliefs. In particular, she takes issue with the fact that while she did not mention any past personal conflicts in her application, such as those that occurred during her six-month detail as the TSE Section Supervisor, Nunez relied on his personal knowledge of those events and included them in his memorandum. She appears to

further argue that it was improper for Nunez to rely on this information to conclude that she possessed only moderate leadership skills, in light of his testimony that at least some of the conflicts were resolved prior to her application and that such interpersonal issues were common challenges for anyone in a new supervisory position.

Again, the purpose of the pretext analysis is to discern whether an employer actually believed the reasons it articulated in support of a decision. *See Kodl*, 490 F.3d at 562. While DuPree not like that Nunez relied on these past conflicts to determine that her leadership skills were moderate, her displeasure does not cast doubt on the sincerity of Nunez's beliefs regarding these skills. If anything, Nunez's reliance on these instances of interpersonal conflict further legitimizes his conclusion that DuPree had moderate leadership skills inferior to those of McCoy.

Finally, DuPree claims that Nunez only employed his personal knowledge of *DuPree's* skills when it worked *to her detriment*, yet only employed his personal knowledge of *McCoy's* skills when it worked *in his favor*. She argues that "[a] jury could infer discrimination from [] Nunez's failure to uniformly assess the two candidates." Pl.'s Resp. at 10. She relies on the above-described evidence and on evidence contained in Nunez's memorandum regarding McCoy. Specifically, though McCoy did not include in his application the fact that he won the "Technician of the Year" award in 2002, Nunez knew of this accomplishment and included it in his memorandum. Additionally, though Nunez testified that he was not aware of any specific experience McCoy had with managing a budget, he did not include in his memorandum a notation indicating McCoy's lack of budgetary experience. *See* Admin. Tr. 160:4-14.

This evidence also fails to support an inference of discrimination. Indeed, the fact that Nunez's personal knowledge regarding McCoy was more favorable than his personal knowledge regarding DuPree does not work to cast doubt on the validity of Nunez's beliefs concerning DuPree's skills and abilities, nor does it provide evidence of disparate treatment. Moreover, technical experience was the most important consideration for Nunez and Oles when selecting a candidate. That Nunez declined to mention McCoy's lack of budgetary experience does not support an inference that he intended to bolster McCoy or somehow treat him more favorably than DuPree; rather, it was likely the result of Nunez's choice to focus on the most salient selection criteria.[8] Accordingly, DuPree fails to present evidence sufficient to demonstrate that defendant's proffered reasons for her non-selection were pretextual and her claims must fail under the direct method. *See Kodl*, 490 F.3d at 562.

## II.    The Indirect Method of Proof

Under the indirect method, DuPree bears the initial burden of producing evidence to sustain a *prima facie* case. To establish a *prima facie* case of race or sex discrimination, DuPree must demonstrate that (1) she is a member of a protected class; (2) she was qualified and applied for a position; (3) she did not receive the position; and (4) her employer gave the position to a similarly situated person outside of her protected class(es) who was similarly or less qualified than she. *Jackson* v. *City of Chi.*, 552 F.3d 619, 622 (7th Cir. 2009). If she meets this burden, defendant must then articulate a legitimate, non-discriminatory reason for its action. If defendant offers a legitimate, non-discriminatory reason, the burden shifts back to DuPree to show that the reason proffered by the defendant is a pretext for discrimination. *Id.*

---

[8]For example, Nunez did not evaluate or mention the budgetary experience of DuPree or any other candidate in his memorandum. *See* Nunez Memo.

Defendant argues that DuPree cannot establish a *prima facie* case because she cannot satisfy the fourth element: that McCoy was similarly situated to DuPree. Defendant further argues that even if DuPree can establish a *prima facie* case, it is still entitled to summary judgment because DuPree cannot demonstrate that its proffered reasons for her non-selection were a pretext for discrimination. The court need not decide whether DuPree has established a *prima facie* case, however, because DuPree has produced no evidence that defendant's articulated reasons for her non-selection were a pretext for discrimination. *See infra* at 11-19. *See also Adelman-Reyes* v. *Saint Xavier Univ.*, 500 F.3d 662, 665-66 (7th Cir. 2007) (citing *Abioye* v. *Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998) ("When the defendant has proffered an explanation for [an adverse employment action] that the court determines to be non-pretextual, the court may avoid deciding whether the plaintiff has met [her] *prima facie* case and instead decide to dismiss the claim because there is no showing of pretext."). Accordingly, because DuPree fails to raise an issue as to whether defendant's proffered reasons were pretextual, her claims must fail under the indirect method. Defendant is therefore entitled to summary judgment on the complaint.

## CONCLUSION AND ORDER

For the reasons discussed above, defendant's motion [#41] is granted. The clerk is instructed to enter summary judgment in favor of the defendant. The case is terminated.


Dated: January 29, 2009                    Enter: _____

                                                  JOAN HUMPHREY LEFKOW
                                                  United States District Judge